FILED

2015 APR 14  PH 2: 11

U.S. DISTRICT COURT
N. DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | I N F O R M A T I O N |
| ) | |
| Plaintiff,       ) | 1  15  CR  142 |
| ) | |
| v.       ) | CASE NO. _____ |
| ) | Title 15, United States Code, |
| JERRY A. CICOLANI, JR.,       ) | Sections 77e(a) and (c); Title 31, |
| ) | United States Code, Sections |
| Defendant.       ) | 5234(a)(1) and (3) |

JUDGE OLIVER

The United States Attorney charges:

**Count 1**
(Sale of Unregistered Securities, Title 15 U.S.C. §§ 77e(a) and (c))

At all times material herein, unless otherwise indicated:

1.      Defendant JERRY A. CICOLANI, JR. ("CICOLANI"), along with K.H. and J.G.,

individuals known to the U.S. Attorney but not charged herein, was a licensed registered

representative with PrimeSolutions Securities, Inc. ("PrimeSolutions"), which maintained offices

in Akron, Ohio, and was registered with the Financial Industry Regulatory Authority, Inc.

("FINRA") (f/k/a the National Association of Securities Dealers ("NASD")).

2.      FINRA was a self-regulatory organization which was regulated by the United

States Securities and Exchange Commission ("SEC").

3.     CICOLANI, K.H., and J.G. were required as part of their employment with PrimeSolutions to file on an annual basis with FINRA various forms regarding their activity as registered representatives.

4.     Kenneth A. Grant ("Grant") and T.A., individuals known to the U.S. Attorney but not charged herein, owned and operated KGTA Petroleum, Ltd. ("KGTA"), which operated in the Northern District of Ohio, Eastern Division, and elsewhere.

5.     On or about December 16, 2008, the articles of organization for KGTA were filed with the Ohio Secretary of State under the name Susannah, LLC.  Subsequently, on or about March 22, 2012, the company's name was changed to KGTA with the Ohio Secretary of State.

6.     Grant, T.A., and others, marketed KGTA to investors as a petroleum company that earned profits from buying and reselling various crude oils and refined fuel products.

7.     Grant and T.A. told investors, in both verbal and electronic communications, that KGTA had relationships with bona fide third-party purchasers and that investor funds would be used to purchase the fuel products at a discount and then the fuel products would be resold to the bona fide purchasers for a substantial profit.

8.     Grant solicited the assistance of CICOLANI to recruit investors to KGTA.  Grant and T.A. informed CICOLANI that KGTA paid 5% per month under each investor agreement. Based on that representation, CICOLANI solicited and obtained investors for KGTA.  Upon obtaining an investment, CICOLANI determined how much of the 5% he would pass on to his clients, and kept the remaining portion as his commission.

9.     In order to conceal his outside business activity from PrimeSolutions, CICOLANI requested that the remaining monthly fees be paid to K.H., an entity registered to K.H. called

2

Turnbury Consulting Group, LLC, and an entity CICOLANI owned called White Pond Wealth Management.

10. KGTA issued securities which were required to be registered with the Securities and Exchange Commission.

11. At no time did CICOLANI, or anyone to his knowledge, file any documentation related to KGTA with the SEC.

12. None of the investors had operational control over KGTA, voting power within KGTA, or control over the money raised by CICOLANI.

13. M.G., an individual known to the U.S. Attorney but not charged herein, was an attorney licensed to practice law in the State of Ohio. CICOLANI believed M.G. acted as the escrow agent for KGTA.

14. M.G. initially maintained his IOLTA account at PNC Bank (f/k/a National City Bank), account number XXXXXX5172. However, on or about July 29, 2013, M.G. switched his IOLTA account to Fifth Third Bank, account number XXXXXX0945.

15. Grant and T.A. made various promises to investors in KGTA's investment agreements, including, but not limited to, the following:

    A. "[t]he parties agree that no fuel will be purchased, until such time as a firm and binding Purchase Order for the sale of said fuel has been issued by a bonafide [sic] third party purchaser."

    B. "[n]o funds shall be released from Escrow [M.G.'s account] until such time as a firm Purchase Order from a bonafide [sic] third party purchaser has been received and accepted by KGTA."

    C. "KGTA shall bear all market risk."

16.     In addition to the investor agreements, KGTA entered into escrow agreements with investors whereby Grant, T.A. and M.G. made multiple promises to investors, including, but not limited to, the following:

A.     "[f]rom time to time KGTA will submit a Bonafide [sic] Purchase Order to Escrow Agent [M.G.] for the sale by KGTA of a specific amount of fuel oil (a "Load") which Purchase Order will be marked as approved by KGTA. Disbursement from escrow shall be utilized to create and sell the Load only."

B.     "KGTA shall cause the proceeds from the sale of the Load to be delivered directly to the Escrow Agent. Escrow Agent shall hold funds in Escrow and disburse the funds in accordance with this Agreement."

C.     "[p]articipant shall be paid a return... per month on its investment; [t]he balance, if any, shall be paid to KGTA."

17.     As a broker employed by PrimeSolutions, CICOLANI was aware that the rules of FINRA, as well as the internal policies of PrimeSolutions, prohibited brokers from accepting compensation from any business activity outside the scope of his employment with PrimeSolutions. CICOLANI knew brokers could not offer or sell any securities, except those sold through a broker-dealer such as PrimeSolutions, which was regulated by the SEC. PrimeSolutions did not authorize or approve KGTA investments, nor did PrimeSolutions offer them for sale.

18.     CICOLANI failed to disclose on multiple questionnaires to PrimeSolutions and the SEC his role in selling securities on behalf of KGTA. Further, CICOLANI failed to disclose to PrimeSolutions and the SEC that he was compensated by KGTA, either directly or indirectly, for CICOLANI selling investments on behalf of KGTA.

19.     CICOLANI, by use of the mails, interstate wires, and other means of instruments of transportation and communication in interstate commerce, received approximately $5,000,000

in commission fees from KGTA for enlisting 39 investors, who collectively lost $7,000,000 from their investments with KGTA in unregistered securities.

All in violation of Title 15, United States Code, Sections 77e(a) and (c).

The U.S. Attorney further charges:

## Count 2
(Structuring, Title 31 U.S.C. §§ 5324(a)(1) and (3))

20.     The allegations set for in paragraphs 1 through 19 in Count 1 of the Information are re-alleged and incorporated by reference herein.

21.     On or about March 19, 2014, the SEC issued a subpoena to CICOLANI requesting documentation, including, but not limited to: (1) sources of income to CICOLANI; (2) payments received from KGTA to any family member or entity with an ownership interest, signatory authority, or beneficial interest; and (3) financial institution accounts with an ownership interest, signatory authority, or beneficial interest.

22.     On or about March 20, 2014, the SEC issued a subpoena to K.H. requesting the same information that the SEC requested from CICOLANI.

23.     CICOLANI, personally and by directing K.H., knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, did structure and attempt to structure the following transactions with multiple financial institutions, which represented criminally derived property from the Northern District of Ohio, to wit: commission fees paid to entities owned by CICOLANI and K.H. for the sale of unregistered securities in KGTA in the Northern District of Ohio, and elsewhere

| Account | Date | Transaction Type | Amount |
|---|---|---|---|
| K.H. Mutual of Omaha #4856 | 4/15/2014 | Cash Withdrawal | $ 8,000.00 |
| K.H. Fifth Third #8986 | 4/16/2014 | Cash Withdrawal | $ 7,500.00 |
| Turnbury Fifth Third #7945 | 4/16/2014 | Cash Withdrawal | $ 7,500.00 |
| Turnbury Fifth Third #7945 | 4/19/2014 | Cash Withdrawal | $ 3,000.00 |
| K.H. Fifth Third #8986 | 4/22/2014 | Cash Withdrawal | $ 7,500.00 |
| Turnbury Fifth Third #7945 | 4/22/2014 | Cash Withdrawal | $ 7,500.00 |
| K.H. Fifth Third #8986 | 4/24/2014 | Cash Withdrawal | $ 5,000.00 |
| Turnbury Fifth Third #7945 | 4/24/2014 | Cash Withdrawal | $ 5,000.00 |
| White Pond Fifth Third #7380 | 4/24/2014 | Cash Withdrawal | $ 7,000.00 |
| K.H. Fifth Third #8986 | 4/28/2014 | Cash Withdrawal | $ 9,000.00 |
| K.H. Fifth Third #8986 | 4/30/2014 | Cash Withdrawal | $ 9,000.00 |
| K.H. Mutual of Omaha #4856 | 5/1/2014 | Cash Withdrawal | $ 9,500.00 |
| K.H. Fifth Third #8986 | 5/2/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/6/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/7/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/10/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/12/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/13/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/15/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/16/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/19/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. FNB of Gulf Coast #1817 | 5/19/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/21/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. FNB of Gulf Coast #1817 | 5/21/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/23/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. FNB of Gulf Coast #1817 | 5/23/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/27/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. FNB of Gulf Coast #1817 | 5/27/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. Fifth Third #8986 | 5/28/2014 | Cash Withdrawal | $ 10,000.00 |
| K.H. FNB of Gulf Coast #1817 | 5/28/2014 | Cash Withdrawal | $ 10,000.00 |
| White Pond Fifth Third #7380 | 5/28/2014 | Cash Withdrawal | $ 10,000.00 |
| | | Total | $ 275,500.00 |

All in violation of Title 31, United States Code, Sections 5324(a)(1) and (3).

STEVEN M. DETTELBACH
United States Attorney

By: *Ann C. Rowland*

Ann C. Rowland
Deputy Criminal Chief